UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

DEMARCUS T. YOUNG,

        Plaintiff,

v.

S. NEWCOMB, et al.,

        Defendants.
_____/

Case No. 2:18-cv-204

Honorable Gordon J. Quist

# **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint against Defendant Horton for failure to state a claim. The Court will also dismiss all of Plaintiff's claims against Defendant Newcomb, with the exception of Plaintiff's First Amendment retaliation claim based on Defendant Newcomb's refusal to permit Plaintiff to leave his work assignment to submit legal mail on August 31, 2018.

**Discussion**

I.       Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Michigan. The events about which he complains occurred at that facility. Plaintiff sues URF Warden Connie Horton and URF Corrections Officer S. Newcomb.

Plaintiff's allegations cover a three-month period: July, August, and September, 2018. At the beginning of that period he was working as a first-shift cook in the chow hall. On July 7, Defendant Newcomb made Plaintiff lift her chair to a more comfortable position. Plaintiff claims that the incident humiliated and embarrassed him because Newcomb also said that Plaintiff could consider it a bonus that he gets to smell her ass. Plaintiff filed a PREA grievance.

Plaintiff claims Defendant Newcomb, thereafter, routinely harassed and degraded Plaintiff, all in retaliation for his filing of grievances against her. The harassment included:

1. On July 17, 2018, Newcomb refused to permit Plaintiff to leave his work assignment to send out his legal mail.

2. On July 24, 2018, Newcomb threatened to write a misconduct against Plaintiff because Plaintiff refused to dispose of a cheese tub at his chow hall table, a tub that Plaintiff contends was not his.

3. On August 3, 2018, Newcomb told Plaintiff to get the fuck out of her way.

4. On August 18, 2018, Newcomb refused to give Plaintiff a bandaid, instead requiring him to return to his unit to obtain one. She said "I'm not giving you shit." Later that day, she gave bandaids to two white prisoners.

5. On August 19, 2018, Newcomb insisted that Plaintiff return to his unit to get a referral to healthcare rather than sending Plaintiff to healthcare directly from his work assignment. She also threatened to write a misconduct on Plaintiff if he did not, indeed, go to healthcare.

6. On August 22, 2018, Newcomb told Food Service Supervisor Weston to write a false misconduct on Plaintiff.

7. On August 25, 2018, Newcomb refused to perform a routine clothed body patdown on Plaintiff before he left work.

8. On August 27, 2018, Newcomb told Plaintiff he was fired.

9. On September 1, 2018, Newcomb refused to permit Plaintiff to leave his work assignment to turn in legal mail even though Plaintiff had permission to do so. She also told Plaintiff "this is not over [racial slur], I will fix you."

10. On September 15, 2018, Newcomb refused to permit Plaintiff to leave his work assignment to turn in his legal mail even though Plaintiff had permission to do so.

(Compl., ECF No. 1, PageID.8-10.)

Plaintiff complained about the situation to Defendant Horton and to URF Psychologist Deary. Neither Horton nor the psychologist took any corrective action. Plaintiff, believing his only means of escaping the harassment was to quit his work assignment, did just that on September 25, 2018. When Newcomb learned Plaintiff had quit, she called Plaintiff a "pussy" and ordered Weston to terminate Plaintiff's assignment for refusing to work. Because Plaintiff quit, he was reclassified as unemployable and restricted to his cell.[1]

Plaintiff alleges that Defendant Newcomb violated Plaintiff's First Amendment rights by retaliating against him for filing grievances and by refusing to permit him to turn in his legal mail. Plaintiff alleges also that Defendant Newcomb violated Plaintiff's Fourteenth Amendment right to equal protection of the laws when she discriminated against Plaintiff by making him return to his unit to obtain a band-aid when, thereafter, she gave band-aids to two white prisoners.

---

[1] Under MDOC Policy Directive 05.01.100, a prisoner who refuses to participate in a work assignment—as Plaintiff did by "quitting" his cook job—may be reclassified as "unemployable" and be ineligible for a work assignment until reclassified.

Finally, Plaintiff alleges that Defendant Horton is liable for failing to prevent the constitutional violations of Defendant Newcomb. Plaintiff seeks compensatory and punitive damages in excess of $150,000.00.

II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III. First Amendment Retaliation

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff's alleged protected conduct here was his serial filing of grievances. The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Nonetheless, the right to file a grievance is protected only insofar as the grievance is not "frivolous." *Herron*, 203 F.3d at 415. "Abusive or manipulative use of a grievance system would not be protected conduct," *King v. Zamiara*, 680 F.3d 686, 699

5

(6th Cir. 2012), and an "inmate cannot immunize himself from adverse administrative action by prison officials merely by filing a grievance or a lawsuit and then claiming that everything that happens to him is retaliatory," *Spies v. Voinovich*, 48 F. App'x 520, 525 (6th Cir. 2002). As the Supreme Court held in *Lewis v. Casey*, "[d]epriving someone of a frivolous claim . . . deprives him of nothing at all, except perhaps the punishment of Federal Rule of Civil Procedure 11 sanctions."

The Sixth Circuit recently provided additional guidance regarding the meaning of grievance frivolity:

> Some cases in this Circuit appear to suggest that a prisoner's grievance is frivolous when the underlying grievance itself is *de minimis*. *Ziegler v. State of Michigan*, 90 F. App'x 808, 810 (6th Cir. 2004) (finding a grievance frivolous when the prisoner complained that the prison officer should "not be able to conduct a non-invasive pat-down search" of her); *White-Bey v. Griggs*, 43 F. App'x 792, 794 (6th Cir. 2002) (finding grievances that "concerned being required to use a typewriter rather than a computer, and being required to sit quietly in defendant's office after being told again that there was no computer available for him to use" to be frivolous and not to "rise to the level of protected conduct"); *Scott v. Kilchermann*, 230 F.3d 1359, at *1-2 (6th Cir. 2000) (finding a grievance frivolous when the inmate complained that he had been subject to verbal abuse); *Thaddeus–X v. Love*, 215 F.3d 1327, at *2-3 (6th Cir. 2000) (finding a prisoner's threat to file a grievance against an officer for "eating waffles at a prison guard desk," which was against prison policy, "patently frivolous as the defendant's conduct had no adverse impact on [the prisoner]"). We have also described a non-frivolous grievance as a "legitimate" grievance. *Pasley v. Conerly*, 345 F. App'x 981, 985 (6th Cir. 2009).

*Maben v. Thelen*, 887 F.3d 252, 264-65 (6th Cir. 2018). In *Maben*, the court determined the grievance was not frivolous because the prisoner complained he had received an inadequate portion of food—"one of the major requirements of life . . . ." *Id*. at 265. Several of the issues raised in Plaintiff's grievances do not implicate a major requirement of life. They are more in the nature of the *de minimis* impositions referenced by the *Maben* court. If, therefore, there is a *de minimis* exception to the protection afforded prisoner grievances, several of Plaintiff's grievances would fall within the exception:

6

1. Plaintiff being made to move Defendant's chair;

2. Plaintiff being told to "get the fuck out of [Defendant's] way[;]"

3. Sending Plaintiff back to his unit for a bandaid (although racial discrimination in band-aid distribution might not be *de minimis*);

4. Directing Plaintiff to seek healthcare from his unit rather than the chow hall;

5. Refusing to shakedown Plaintiff

Plaintiff's grievances regarding those incidents appear to be frivolous and, thus, would not be worthy of First Amendment protection. Nonetheless, Plaintiff also raises issues in his grievances that are plainly more than *de minimis* incidents, principally grievances regarding legal mail and threatened misconducts. Those grievances would warrant First Amendment protection.

Next, Plaintiff must allege that Defendant Newcomb took adverse actions against him. The adverseness inquiry is an objective one, and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original). Here, every allegation of an adverse action taken by Defendant Newcomb against Plaintiff serves a double purpose. First, the alleged action serves as a means of retaliation for the grievances that have preceded it; and second, it serves as the basis for a new grievance. Thus, so long as Defendant Newcomb and Plaintiff interact, the cycle continues.

The actions described as *de minimis* above are also not sufficiently adverse to deter a person of ordinary firmness from engaging in protected conduct. Additionally, Plaintiff frequently describes Newcomb's conduct as harassing, threatening, intimidating, abusive, humiliating, or retaliatory in a conclusory fashion without ever explaining how Newcomb's conduct warrants those descriptions. (Compl., ECF No. 1, PageID.7-13, ¶¶ 6, 12, 13(A)-(B),

Statement of Claim.) Nonetheless, where Plaintiff's allegations are not *de minimis,* and where he has described the conduct in more than a conclusory fashion, he has alleged actions by Newcomb that might deter a person of ordinary firmness from engaging in protected conduct: Plaintiff's allegations that Defendant Newcomb interfered with his legal mail or threatened Plaintiff with misconducts.

Even if Plaintiff has adequately alleged that he engaged in protected conduct and even if Plaintiff has adequately alleged that Defendant Newcomb took adverse action, the allegations of his complaint fall short in linking the adverse action to the protected conduct with a retaliatory motive. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("bare allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening). In some circumstances, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d

8

408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

Plaintiff merely alleges the ultimate fact of retaliation. He alleges no facts from which to reasonably infer that Defendants' actions were motivated by any of his protected conduct. He merely concludes that because he filed a continuous stream of grievances during the relevant time period, Defendant Newcomb's actions must have been motivated by his grievances. The Sixth Circuit, however, has been reluctant to find that temporal proximity between the filing of a grievance and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Hill v. Lappin*, 630 F.3d 468, 476 (6th Cir. 2010). This is especially true where, as here, the plaintiff is a prolific filer of grievances. *Coleman v. Bowerman*, 474 F. App'x 435, 437 (6th Cir. 2012) (holding that temporal proximity to the filing of a grievance is insufficient because any adverse action "would likely be in 'close temporal proximity' to one of [the plaintiff's] many grievances or grievance interviews"). In the body of his complaint, Plaintiff merely alleges temporal proximity between Defendant's conduct and his many grievances or simply parrots the word "retaliation." Such allegations are insufficient to state a retaliation claim.

If one ventures beyond Plaintiff's allegations to the almost 150 pages of grievances and related documents that Plaintiff has filed as exhibits, there are instances where, in a grievance, Plaintiff links objectionable conduct by Defendant Newcomb to Plaintiff's filing of a grievance. For example, in Grievance URF 1808-2277-17B, Plaintiff complains that, on August 3, 2018, Defendant Newcomb told Plaintiff "to get the fuck out of her way." (Grievance, ECF No. 1-4, PageID.49.) When Plaintiff asked "why", Newcomb purportedly responded "you wrote a grievance on me." (*Id.*) It is impossible to say whether the grievance that prompted the response was a legitimate one, but even if it were, the resulting action is not sufficiently adverse to deter

9

protected conduct. In only one instance, however, does Plaintiff link adverse action to protected conduct with allegations that demonstrate a retaliatory motive. In Grievance URF 1809-2502-17B, Plaintiff alleges that Defendant Newcomb refused to permit Plaintiff to return to his unit to submit his legal mail even though Plaintiff had permission from the food service to do so. Plaintiff claims that when he protested, Defendant Newcomb responded: "You should have thought of that before you wrote them grievances on me." (Grievance, ECF No. 1-13, PageID.93.) Then, she fired him for arguing about it. (*Id.*) Plaintiff filed the grievance, and the matter was corrected at the first step. (*Id.*, PageID.94.) The allegations, however, suffice to state a First Amendment retaliation claim.

IV.     First Amendment Access to the Courts

Plaintiff contends that on the occasions when Defendant Newcomb refused to permit him to leave the chow hall to submit legal mail, she interfered with his First Amendment right to access the courts. It is clearly established that prisoners have a constitutionally protected right of access to the courts under the First and Fourteenth Amendments. *See Lewis v. Casey*, 518 U.S. 343, 354 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Prison officials have a two-fold duty to protect a prisoner's right of access to the courts. *McFarland v. Luttrell*, No. 94-6231, 1995 WL 150511, at *3 (6th Cir. Apr. 5, 1995). First, they must provide affirmative assistance in the preparation of legal papers in cases involving constitutional rights, in particular criminal and habeas corpus cases, as well as other civil rights actions relating to the prisoner's incarceration. *Id.* (citing *Bounds*, 430 U.S. at 824-28). Second, the right of access to the courts prohibits prison officials from erecting any barriers that may impede the inmate's accessibility to the courts. *Id.* (citing *Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992)); *see also Bounds*, 430 U.S. at 822 (citing *Ex parte Hull*, 312 U.S. 546, 549 (1941)).

In order to state a viable claim for interference with his access to the courts, a plaintiff must show actual injury to pending or contemplated litigation. *See Lewis*, 518 U.S. at 349; *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000.

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

Here, Plaintiff has not alleged actual injury to pending or contemplated litigation. Indeed, he has not even alleged the underlying cause of action.[2] Accordingly, Plaintiff has failed to state a claim for denial of access to the courts.

V.      Fourteenth Amendment Equal Protection

The Equal Protection Clause prohibits discrimination by government actors which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681-82 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim,

---

[2] The Court has reviewed Plaintiff's filings in this Court, the United States District Court for the Eastern District of Michigan, and the Michigan appellate courts. There is no evidence that Plaintiff suffered in any respect by the brief delays caused by Defendant Newcomb's refusals to permit Plaintiff to leave the chow hall to submit his legal mail.

11

a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'").

Plaintiff alleges disparate treatment here with regard to Defendant Newcomb's distributions of band-aids. Plaintiff, who is not white, claims Newcomb would not give him a band-aid, but made him return to his unit for one. Later the same day she gave band-aids to two white prisoners. Although allegations of disparate treatment are necessary, they are not, standing alone, sufficient to state an equal protection claim. Plaintiff must also allege impermissible discriminatory intent. To establish a violation of the Equal Protection Clause, an inmate must show that the defendants purposefully discriminated against him. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). Such discriminatory purpose must be a motivating factor in the actions of the defendant. *Id.* at 265-66.

"A plaintiff presenting a race-based equal protection claim can either present direct evidence of discrimination, or can establish a prima facie case of discrimination under the burden-shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 458 (6th Cir. 2011). Plaintiff's allegations of discriminatory treatment are conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

Plaintiff fails to allege sufficient facts to support a claim of intentional race discrimination by either direct or indirect evidence. *See Davis v. Prison Health Servs.*, 679 F.3d 433, 440 (6th Cir. 2012) (discussing the distinction between direct and indirect methods of proving discrimination). First, Plaintiff does not allege facts constituting direct evidence of discriminatory

intent in connection with Defendant Newcomb's refusal to provide him with a band-aid. *See Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 458 (6th Cir. 2011) (citing *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003)); *see also Davis*, 679 F.3d at 440.

Second, Plaintiff fails to allege facts supporting an inference of discriminatory intent indirectly under the burden-shifting framework of *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). He fails to allege that the white inmates were similarly situated in all relevant respects. *See Umani*, 432 F. App'x at 458. To be a similarly-situated person member of another class, "the comparative [prisoner] 'must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it.'" *Umani*, 432 F. App'x at 460 (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)). Although Plaintiff alleges that Newcomb gave two white prisoners band-aids, he offers no facts to permit an inference that the white prisoners and Plaintiff were similarly situated in relevant respects.

Because Plaintiff's allegations of discriminatory intent are wholly conclusory, he has failed to state an equal protection claim.

### VI. Claims Against Defendant Horton

Plaintiff alleges that on September 21, 2018, he directly confronted Defendant Horton regarding the problems he was having with Defendant Newcomb. Moreover, Horton had played some role in responding to Plaintiff's grievances regarding Newcomb. Therefore, Plaintiff alleges, Defendant Horton knew about Newcomb's unconstitutional conduct and "failed to provide corrective action . . . ." (Compl., ECF No. 1, PageID.13.)

Plaintiff fails to make any other specific factual allegations against Defendant Horton. He only claims that she failed to stop Defendant Newcomb's misconduct. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendant Horton engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against her.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendant Horton will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Moreover, all of Plaintiff's claims against Defendant Newcomb except Plaintiff's First Amendment retaliation claim based on Defendant Newcomb's refusal to permit Plaintiff to leave his work assignment to submit legal

mail on August 31, 2018, will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

An order consistent with this opinion will be entered.


Dated: December 12, 2018                             /s/ Gordon J. Quist
                                                    GORDON J. QUIST
                                            UNITED STATES DISTRICT JUDGE