UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DEMARCUS T. YOUNG #753683,      Case No. 2:18-cv-00204

     Plaintiff,     Hon. Gordon J. Quist
           U.S. District Judge

v.

S. NEWCOMB, et al.,

     Defendants.
_____/

**REPORT AND RECOMMENDATION**

**I. Introduction**

This is a civil rights action brought by state prisoner DeMarcus T. Young pursuant to 42 U.S.C. § 1983. Young says that while he was confined at the Chippewa Correctional Facility (URF), Correctional Officer (CO) Sheri Newcomb, the only remaining Defendant, retaliated against him by refusing to allow him to leave his kitchen work assignment to send legal mail to the court. Young says that, as a result, he missed a court deadline, and that Newcomb fired him from his job when he protested.

Newcomb argues that Young cannot show that adverse action was taken against him. Newcomb says that Young did not have a court deadline, was able to send mail after work hours, and was not fired from his job.

Newcomb filed a motion for summary judgment. (ECF No. 40.) Young filed a response. (ECF No. 42.) It is the opinion of the undersigned that Young has failed to present a genuine issue of material of fact on the issue of whether Defendant

Newcomb retaliated against him. It is respectfully recommended that the Court grant the motion for summary judgment.

## II. Factual Allegations

Young says that Defendant Newcomb violated his rights by retaliating against him after he filed a Prisoner Rape Elimination Act (PREA) grievance and regular grievances against her. (ECF No. 1, PageID.8-9.)

Young alleged that he was a food service worker assigned to the first shift and that he worked from 5:00 a.m. to 1:00 p.m., Sunday through Tuesday. (*Id.*, PageID.15.) Young claims that Defendant Newcomb retaliated against him by preventing him from exercising his right to send out his legal mail. (*Id.*)

## III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475

U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

## IV. Analysis of Retaliation claim

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to support a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). "If the defendant can show that he would have taken the same action in absence of protected activity, he is entitled to prevail on summary judgment." *Thaddeus-X*, 175 F.3d at 399.

Defendant argues that her actions did not amount to adverse action necessary to sustain a retaliation claim. Young asserts that Newcomb engaged in two separate adverse acts against him:

> (1) that Newcomb caused him to miss a deadline when she refused to let him send out his legal mail before 10:00 a.m. on August 31, 2018, which triggered the dismissal of his state lawsuit; and

(2) that Newcomb fired him from his job when he continued to argue that he should be allowed to mail his letter to the court.

To fully understand Young's claim, additional background facts are presented in Defendant's motion. Newcomb presents information showing that a prisoner at URF may send mail out of the prison throughout the day by depositing it in a housing unit mailbox. (ECF No. 41-2, PageID.340.) To ensure that mail gets sent out the day it is delivered, expedited mail must be submitted before 10:00 a.m. URF Operating Procedure 05.03.118 provides in part that:

> Each housing unit will have a mail box for outgoing mail and mail will be picked up by staff on the evening of each business day and brought to the Mail Room. Outgoing mail will be picked up at the Mail Room by the U.S. Post Office on each business day.
>
> Expedited legal mail will be handled in each housing unit by 10:00 a.m. and will be processed in accordance with CFA O.P. 05.03.118, "Processing of Prisoner Legal Mail and Court Filing Fees". Writing materials are available from housing unit staff and postage is available in the Prisoner Store. Postage will be provided in accordance with P.D. 05.03.118, "Prisoner Mail" and O.P. CFA 04.02.130, "Purchase of Metered Envelopes".

(ECF No. 41-3, PageID.346-347.)

A prisoner who has a morning work schedule needs a special accommodation to leave work before 10:00 a.m. to send expedited mail out of the prison. (ECF No. 41-2, PageID.341 (affidavit of Prison Counselor Rick Wonnacott).)

Young's Prison Counselor (PC), Rick Wonnacott, assisted him with expedited mail requests to meet legal deadlines. (*Id.*, PageID.340.) Young regularly insisted that he had legal deadlines to meet. (*Id.*) Wonnacott believed that Young was manipulating the system by using his expedited mail requests to get special accommodations to leave his work assignment. (*Id.*, PageID.341.) Wonnacott

- 4 -

informed Young that before he could get a special accommodation to leave his work assignment to send legal mail, he needed to first provide Wonnacott with verification of a court deadline.[1] (*Id.*) Since Defendant Newcomb was the kitchen custody officer, Wonnacott informed her that Young first needed permission from Wonnacott before he could receive a special accommodation to leave his work assignment to send expedited mail. (*Id.*)

Wonnacott states that Young never provided him with documentation that he needed to meet a court deadline on August 31, 2018, and Wonnacott never gave him an accommodation to send legal mail that day.[2] (*Id.*, PageID.342.)

1. **Legal Mail**

Defendant Newcomb argues that Young did not have a court deadline and he could have sent his mail after work or at any other time. As a result, even accepting the fact allegations as true, Defendant Newcomb argues that Young did not suffer adverse action when she disallowed him to leave his work assignment.

Young says that he needed to send his legal mail to respond to a letter from the Saginaw County Court dated August 29, 2018. Young says that his lawsuit was subsequently dismissed because he did not timely respond to the letter due to Defendant Newcomb's refusal to let him send expedited legal mail.

---

[1] Wonnacott describes this procedure as an agreement. Young states that he never agreed to the procedure. Whether Wonnacott and Young agreed to this procedure is not a material fact for purposes of this motion. (ECF No. 41-2, PageID.342.)

[2] Wonnacott did not work on August 31, 2018, so he could not have given Young permission to send out legal mail that day, but Young never sought permission to send out legal mail prior to August 31, 2018. (ECF No. 41-2, PageID.342.)

The letter from Saginaw County Deputy Clerk Nicole Perez is shown below:

AUGUST 29, 2018

DEMARCUS YOUNG # 753683
4269 WEST M-80
KINCHELOE, MI 49784

RE: CORRESPONDENCE INQUIRING OF WAIVER FORM AND COPIES

MR. YOUNG,

THIS OFFICE IS UNABLE TO FIND A WAIVER IN YOUR NAME OR A NEW CASE FILING. WE ARE SORRY TO CAUSE YOU ANY INCONVENIENCE BUT ARE YOU ABLE TO SUPPLY US WITH A COPY OF THE LETTER YOU RECEIVED FROM OUR OFFICE. WE WILL ALSO NEED TO KNOW THE NAME OF THE OTHER PARTY/PARTIES ASSOCIATED WITH YOUR FILING

WE WILL BE ABLE TO CONDUCT A MORE THROUGH CHECK ONCE WE RECEIVE THIS INFORMATION. AGAIN, WE APOLOGIZE FOR THE INCONVENIENCE.

NICOLE R. PEREZ
DEPUTY COUNTY CLERK
SAGINAW COUNTY CLERK-
CIRCUIT COURT RECORDS OFFICE

(ECF No. 42-10, PageID.491.[3])  The letter was in response to Young's request and contained no deadline for an additional response from Young.

---

[3]   Defendant submitted an affidavit from Nicole Perez. (ECF No. 41-6, PageID.424.)  Perez says that she conducted a search using case number 18-036572-CZ in late 2019, which is the case number in *Young v. Lamon* that was dismissed on December 7, 2018, due to Young's failure to serve the defendant.  Perez determined that the case was a divorce case that did not involve the Plaintiff in this case.  (*Id.*)  This appears to be contradicted by the order of dismissal attached to Young's response brief, which indicates that this case was filed by Young against the victim of his crime. (ECF No. 42-10, PageID.492.)  This contradiction of fact, however, is not a material issue of fact for purposes of this motion.

Nevertheless, Young argues that because he was prohibited from submitting his response to this letter before 10:00 a.m. on August 31, 2018 – thus ensuring that the prison would send the mail out that day – his lawsuit was dismissed by the Saginaw Circuit Court. As evidence of this, Young attached an order of dismissal in *Young v. Lamon*,4 18-036872-CZ, dated December 7, 2018. (*Id.*, PageID.492.) But that court order states that Young's case was dismissed for lack of service. (*Id.*) Perhaps more importantly, the order of dismissal did NOT state that the dismissal was the result of Young filing a late response to Ms. Perez's letter of August 29, 2018. Thus, the order of dismissal undercuts Young's claim.

In the opinion of the undersigned, Young has failed to present evidence establishing a genuine issue of material fact as to Defendant Newcomb's first alleged adverse action against – i.e., her alleged refusal to allow him to leave his work assignment to send out expedited mail. The evidence in the record shows that Young did not have a court deadline to meet and that he could have simply mailed his letter in his housing unit later that day. Thus, even if Newcomb has prevented Young from leaving his job early, that action caused Young no identifiable harm and must be regarded as *de minimis* in nature. Furthermore, Young has not shown that he submitted anything late, or that his response to the August 29 letter from Perez had anything to do with the dismissal of his lawsuit against the victim of his crime on December 7, 2018.5

---

4   Young's lawsuit involved a complaint that the victim in Young's criminal case committed perjury. (ECF No. 41-5, PageID.396-397.)
5   The order of dismissal indicated that Young had sought and received an

### 2. Job Termination

The parties dispute whether Young was terminated from his job after he argued with Defendant Newcomb. Young argued that he had permission from the kitchen supervisor to leave work and send out his legal mail. Young says he was fired by Newcomb. Newcomb says that she did not have the authority to fire him from his kitchen position, and that Young finished out his shift and was never terminated from his kitchen assignment.

The Step I grievance response indicates that Young was "laid in for getting permission to go turn in his legal work," and that Newcomb refused to allow Young to leave work. Newcomb was told that because Young had permission to leave work, he should have been allowed to leave work. Further, Young returned to work 15 to 20 minutes later. The Step I grievance response concluded that the issue had been addressed on the date of the incident. (ECF No. 42-3, PageID.450.) But, more importantly, the Step I grievance response does not indicate that Young was terminated. Instead, it shows that he was allowed to return to work.

The relevant portion of the Step I grievance response is shown part below.

---

extension of time to serve the Defendant.

> **INVESTIGATION SUMMARY:**
> While interviewing prisoner Young on a previous grievance, he explained that he was just laid in for getting permission to go turn in his legal work. I was told that he talked to state food service and that he had a signed itinerary to leave and go do his legal work with the Prison Counsler. He showed me the signed itinerary. I then contacted Food Service Newcom and she stated that she did not allow prisoner Young to leave and do his legal work. I informed her that he had permission from food service and that he needed to be called back into work and that since he had permission that he should have been allowed to leave. Prisoner Young returned back to work within 20 minutes of me addressing the issue.
> Officer Newcomb was interviewed and asked what was said. She stated she was professional at all times and did not use any profanity during the interaction.
> Prisoner Young was interviewed. Although the situation was corrected and resolved, prisoner Young would not sign off of the grievance.
> PC Wonnacott was not working that day and prisoner Young never asked to see another PC to complete his legal work.
>
> **APPLICABLE POLICY, PROCEDURE, ETC.:**
> PD 03.03.130, OP.URF.05.02.110, OP.05.03.118, and URF OP.05.03.118
>
> **DECISION SUMMARY:**
> This grievance had been resolved on the day that it had occurred. Officer Newcomb was addressed on how to handle prisoners that have legal material. Prisoner Young was not fired from his job and maintains it currently as of the answering of this grievance. There is no evidence to support the prisoners claim that Officer Newcomb is harassing prisoner Young or that abusive language was used. This grievance is considered partially resolved.

(*Id.*)

In addition, according to PC Wonnacott, Defendant Newcomb did not have the authority to terminate Young from his position. (ECF No. 41-2, PageID.342-343.) According to Wonnacott, only the Classification Director could terminate Young from his position. (*Id.*) At most, Newcomb could lay-in Young pending review by the Classification Director. (*Id.*)

Young admits that he argued with Defendant Newcomb after she told him he could not leave his kitchen assignment to send his mail and because he continued to argue she "fired" him from his job. (ECF No. 41-5, PageID.379.) During his deposition, Young testified:

- 9 -

> So I sat down at the desk. Well, I sat down not at the desk but at the tables that's across from the desk and demanded that, so she told me, well, since I wanted to argue with her and continue to argue with her that she was going to fire me and that I don't have to worry about asking her to turn in my legal mail anymore, so she fired me.

(ECF No. 41-5, PageID.379.)  Young was not actually fired.  (*Id.*, PageID.380.) Young returned to his prison unit and was called back to work 15 to 20 minutes later. (*Id.*)  Young explained "obviously I had gotten my job back."  (*Id.*, PageID.383.)

In the opinion of the undersigned, Young failed to present evidence establishing a genuine issue of material relating to his claim that he was fired.  The evidence before the Court shows that Young was not fired from his job.  At best, Young showed that Defendant Newcomb sent him back to his unit because he continued to argue with her after she told him she would not allow him to send his mail without prior authorization from his prison counselor.  Thus, Young has failed to establish that Newcomb's conduct rose to the level of adverse conduct.

As outlined above, to prove a retaliation claim, a plaintiff must prove a cause connection between his or her protected conduct and the adverse action by a defendant. *Thaddeus-X*, 175 F.3d at 394.  Here, Young has not shown a causal connection between Defendant Newcomb's alleged adverse actions and his protected

conduct, which, in this case, is the filing of PREA grievances and other grievances. The record establishes that Defendant Newcomb ordered Young to his prison unit because he continued to argue with her after informing him that he could not leave his kitchen assignment.  In the opinion of the undersigned, the evidence in the record does not create a genuine issue of material fact as to the causal connection between protected conduct by Young and adverse action by Newcomb.

## V. Recommendation

It is respectfully recommended that the Court grant Defendant's motion for summary judgement (ECF No. 40) and dismiss this case.

NOTICE TO PARTIES:   Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.   28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).   Failure to file timely objections constitutes a waiver of any further right to appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).   *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:    July 22, 2020                             /s/ *Maarten Vermaat*
                                                    MAARTEN VERMAAT
                                                    U.S. MAGISTRATE JUDGE